

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

United States Courts
Southern District of Texas
FILED

FEB 26 2014

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | 14-0089 |
| VS. | § § | CRIMINAL NO. H- |
| ROBERT ALAN BERRY aka "CHRIS" | § § § | (UNDER SEAL) |

**INDICTMENT**

**UNSEALED PER ORDER**
NOV 2 4 2014

**INTRODUCTION**

At all times material to this indictment:

1. Pelican Eyes Piedras y Olas, Sociedad Anonima ("PEPO") was a closely held company created in 1998 under the laws of Nicaragua. PEPO owned and operated a luxury hotel and resort (the "Resort") located on the Pacific coast of Nicaragua in the town of San Juan del Sur. The Resort began as a small hotel but grew into a large development in which individual residences were sold to investors from the United States and elsewhere.

2. Robert Alan "Chris" Berry ("BERRY") was a United States citizen who moved to San Juan Del Sur and was a founder and the President and General Manager of PEPO.

3. Financing for development of the Resort came from individual investors who purchased Resort residences or who loaned money to PEPO. Financing also came from banks that loaned money to PEPO.

4. In or about October 2009, PEPO collapsed financially. Soon

thereafter, BERRY left Nicaragua, and PEPO was taken over by new ownership and management.

## COUNTS ONE-TWO
### (Wire Fraud, 18 U.S.C. § 1343)

A.  INTRODUCTION

1.  The Grand Jury adopts, realleges, and incorporates herein the Introduction section of the Indictment as if set out fully herein.

B.  THE SCHEME AND ARTIFICE

2.  From in or about 1998, and continuing through in or about October 2009, in the Southern District of Texas and elsewhere, the defendant,

**ROBERT ALAN BERRY**
aka "CHRIS,"

knowingly devised and intended to devise a scheme and artifice to defraud PEPO investors and lenders, and to obtain money by means of materially false and fraudulent pretenses, representations and promises, in that, he misled PEPO investors and lenders in order to induce them to purchase and sell properties or lend money, while he conducted undisclosed transactions with the properties that he had sold or pledged as collateral, encumbering the interests of the owners and lenders in the properties.

### C. MANNER AND MEANS OF THE SCHEME

It was part of the scheme that:

**a. Misrepresentations Regarding BERRY's Background**

3. BERRY made false representations about his personal background to potential PEPO investors and lenders in order to gain their confidence. BERRY then proceeded to sell to investors many more Resort residences than would ever be built by PEPO and obtained from individual lenders and from banks numerous loans that would never be repaid.

4. As PEPO slid financially further underwater, BERRY made the following false statements and undisclosed transactions in order to keep funds flowing from investors and lenders to PEPO.

**b. Double Selling Property**

5. First, BERRY sold the same Resort residence to more than one buyer. In or about 2007, BERRY sold a property known as "Casa Villa Bienestar" to an original buyer. On or about February 28, 2009, BERRY sold the same property to a second buyer. Neither buyer was informed of the other, and BERRY promised both buyers of the property "good and clear record and marketable title, free from encumbrances."

**c. Selling Loan Collateral**

6. Second, BERRY provided Resort residences as collateral for loans but

3

would then fail to repay the loans and sell the collateral without the knowledge of the lenders.

7. On or about March 30, 2007, BERRY obtained a $450,000 loan to PEPO that was not repaid. The promissory note for the loan designated a Resort residence known as "Trinitaria" as the collateral. On or about April 10, 2007, shortly after obtaining the loan and without the knowledge of the lender, BERRY sold Trinitaria to an investor, promising "good and clear record and marketable title, free from encumbrances."

8. In or about May of 2007, BERRY obtained a $530,000 loan to PEPO that was not repaid. BERRY provided the lender with a security document that named as the loan collateral a Resort property that did not exist, the name of which was an amalgamation of the names of two separate, adjoining Resort properties. Without the knowledge of the lender, Berry then sold both adjoining properties to investors. The first adjoining property was sold on or about September 8, 2007; the second was sold on or about May 31, 2009. Both investors were promised "good and clear record and marketable title, free from encumbrances."

9. On or about September 12, 2008, Berry obtained a $270,000 loan for PEPO from a bank. Berry provided as collateral for the loan Resort property that included "hotel room G3." On or about March 17, 2009, Berry sold hotel room G3 to an investor for $160,000, promising the investor "good and clear record and marketable title, free from encumbrances."

4

10. On or about January 29, 2008, Berry obtained from a bank a $1.5 million line of credit for PEPO. All the funds were drawn on the line of credit. Berry provided as collateral for the loan Resort property that included "Casa Brasil." On or about November 7, 2008, Berry sold Casa Brasil to an investor for $169,000, promising in the Purchase and Sale Agreement, "good and clear record and marketable title, free from encumbrances."

d. **Mortgaging Properties that Had Already Been Sold**

11. Third, BERRY provided previously sold Resort residences as collateral for loans.

12. On or about August 17, 2007, Berry obtained from a bank a $260,000 loan for PEPO. BERRY provided a property known as "Casa Ruso," which he had previously sold to an investor, as collateral for the loan, but he failed to inform the investor of his use of Casa Ruso to obtain the loan.

13. On or about January 29, 2008, BERRY obtained from a bank a $1.5 million line of credit for PEPO. All the funds were drawn on the line of credit. BERRY provided properties that he had previously sold to investors as collateral for the loan, but he did not inform the investors of his use of their properties to obtain the loan. These properties included, among others, "Casa Pochote," "Casa Guayacan," and "Casita Villa Madrono."

e. **Failing to Remit Sales Proceeds**

14. Fourth, BERRY failed to remit to a seller of a Resort residence

proceeds from the sale of the residence. On or about February 21, 2007, BERRY agreed to cancel a sales contract for a residence known as "Ridgeline One Bedroom Townhome 4-B" and pay the owner of the property the resale price, minus a sales commission. BERRY then proceeded to resell the property twice, but he never paid the sales proceeds to the original owner, falsely claiming that he had been unable to resell the property.

D. EXECUTION OF THE SCHEME

15. On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere, the defendant **ROBERT ALAN BERRY** aka "CHRIS," for the purpose of executing the aforementioned scheme and artifice to defraud and to obtain money by material false and fraudulent representations, pretenses, and promises, did knowingly cause to be transmitted by means of wire communication in interstate and foreign commerce, the transfers of funds described below:

| Count | Date | Wire Communication |
|---|---|---|
| 1 | 3/2/2009 | $200,000 wire transfer from a Fidelity account in the United States to a PEPO account at Banco de America Central, Nicaragua for purchase of "Casa Villa Bienestar" |

| 2 | 4/6/2009 | $125,000 wire transfer from a Fidelity account in the United States to a PEPO account at Banco de America Central, Nicaragua for purchase of "Casa Villa Bienestar" |

In violation of Title 18, United States Code, Section 1343.

## COUNTS THREE-FOUR
### (Money Laundering, 18 U.S.C. § 1957)

1. The Grand Jury adopts, realleges, and incorporates herein the Introduction Section of the Indictment and the Manner and Means Section of Counts One through Two.

2. On or about the dates set forth below, in the Southern District of Texas and elsewhere, the defendant,

**ROBERT ALAN BERRY**
aka "CHRIS,"

a United States person, did knowingly engage and attempt to engage in the following monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the wire transfer of funds derived from a specified unlawful activity, that is, wire fraud, a violation of Title 18, United States Code, Section 1343.

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| 3 | 3/6/2009 | $40,000 wire transfer from a PEPO account at Banco de America Central, Nicaragua to an account at DFCU Financial in the United States |
| 4 | 4/8/2009 | $40,000 wire transfer from a PEPO account at Banco de America Central, Nicaragua to an account at DFCU Financial in the United States |

In violation of Title 18, United States Code, Section 1957.

## NOTICE OF FORFEITURE
## 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to defendant,

**ROBERT ALAN BERRY**
aka "CHRIS,"

that upon conviction of a violation of Title 18, United States Code, Section 1343, all property, real or personal, which constitutes or is derived from proceeds traceable to such offense, is subject to forfeiture.

## NOTICE OF FORFEITURE
## 18 U.S.C. § 982(a)(1)

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to defendant,

### ROBERT ALAN BERRY
### aka "CHRIS,"

that upon conviction of a violation of Title 18, United States Code, Section 1957, all property, real or personal, involved in money laundering offenses or traceable to such property, is subject to forfeiture.

### Money Judgment

Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

### Substitute Assets

Defendant is notified that in the event that property subject to forfeiture, as a result of any act or omission of defendant,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendant up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL:

Original Signature on File

_____
FOREPERSON OF THE GRAND JURY

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
Robert S. Johnson
Assistant United States Attorney