UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | CRIMINAL NO. 14-0089 |
| | § | |
| ROBERT ALAN BERRY, | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Abe Martinez, Acting United States Attorney for the Southern District of Texas, and Robert S. Johnson, Assistant United States Attorney, and the defendant, Robert Alan Berry ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count Three of the Indictment. Count Three charges Defendant with money laundering, in violation of Title 18, United States Code, Section 1957. Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1957, is imprisonment of not more than 10 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of three years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he/she should violate the conditions of any period of

supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

**Mandatory Special Assessment**

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4. Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status if he/she is not a citizen of the United States. Defendant understands that if he/she is not a citizen of the United States, by pleading guilty he/she may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

**Waiver of Appeal and Collateral Review**

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right

to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

8. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count Three of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

(c) The United States and Defendant agree that for purposes of sentencing under the Sentencing Guidelines, the readily provable relevant conduct of Defendant's crime, based on the evidence currently in the possession of the United States, is a loss amount of $1,955,528.

(d) The United States and Defendant agree that the following sections of the Sentencing Guidelines apply as follows:

| | | |
|---|---|---|
| Base offense level: | 6 | §2S1.1(a)(1), §2B1.1(a)(1) |
| Loss amount: | +16 | §2B1.1(b)(1) |
| Crime committed outside U.S. | +2 | §2B1.1(b)(10) |
| Convicted under 18 U.S.C. §1957 | +1 | §2S1.1(b)(2)(A) |

## Agreement Binding - Southern District of Texas Only

9. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of

4

Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

10. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)  to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)  to set forth or dispute sentencing factors or facts material to sentencing;

(c)  to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)  to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)  to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

11. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence

up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

**Rights at Trial**

12. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court; and

> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his/her own behalf.

**Factual Basis for Guilty Plea**

13. Defendant is pleading guilty because he/she is in fact guilty of the charge contained in Count Three of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Pelican Eyes Piedras y Olas, Sociedad Anonima ("PEPO") was a company created in 1998 under the laws of Nicaragua. PEPO owned and operated a luxury hotel and resort (the "Resort")

located on the Pacific coast of Nicaragua in the town of San Juan del Sur. Defendant Robert Alan Berry ("BERRY") was a United States citizen who moved to San Juan Del Sur and was a founder and the President and General Manager of PEPO.

Financing for development of the Resort came from individual investors in the United States and elsewhere who purchased Resort residences or who loaned money to PEPO. Financing also came from banks that loaned money to PEPO. BERRY misled PEPO investors and lenders in order to induce them to purchase and sell properties or lend money, while he conducted undisclosed transactions with the properties that he had sold or pledged as collateral, encumbering the interests of the owners and lenders in the properties. This scheme of soliciting investments and loans through false pretenses affected a number of PEPO properties. During the scheme, BERRY sold the same property to more than one buyer, failed to remit sales proceeds to a seller of a property, mortgaged properties that had already been sold, and sold properties that had been pledged as loan collateral.

Regarding double selling of property, BERRY sold a Resort residence known as Casa Villa Bienestar ("Bienestar") to more than one buyer. In or about 2006, BERRY sold Bienestar to the original buyer ("Buyer 1") for $265,000. On or about February 28, 2009, BERRY sold the same property to a second buyer ("Buyer 2") who resided in Houston, Texas. The sales price to Buyer 2 was $325,000. Neither buyer was informed of the other, and in their sales contracts, BERRY promised both buyers of the property "good and clear record and marketable title, free from encumbrances." On March 2, 2009, Buyer 2 wired $200,000 from Buyer 2's Fidelity account in the U.S. to a PEPO account at Banco de America Central, Nicaragua for the purchase of Bienestar. On April 6, 2009, Buyer 2 wired the remaining $125,000 to and from the same accounts.

On or about March 6, 2009, BERRY wire transferred $40,000 of the funds paid by Buyer 2 for the supposed purchase of Bienestar from a PEPO account at Banco de America Central, Nicaragua to an account at DFCU Financial in the United States. Again, on April 8, 2009,

BERRY wire transferred $40,000 of the funds paid by Buyer 2 for the supposed purchase of Bienestar from a PEPO account at Banco de America Central, Nicaragua to an account at DFCU Financial in the United States. BERRY made these wire transfers in order to pay-off another PEPO investor.

In approximately October of 2009, PEPO collapsed financially. Lenders foreclosed, and the resort was ultimately sold to a new owner. As a result of the clouded title to Bienestar from BERRY's double-dealing and the subsequent foreclosures and sale, neither Buyer 1 nor Buyer 2 now own Bienestar.

BERRY also sold loan collateral without the knowledge of the lenders. On March 30, 2007, BERRY obtained a $450,000 loan for PEPO from Lender 1 that designated as collateral for the loan a Resort residence known as "Trinitaria." On April 10, 2007, without the knowledge of Lender 1, BERRY sold Trinitaria. BERRY failed to repay the loan, causing a loss to Lender 1 of $422,778.

In May of 2007, BERRY obtained a $530,000 loan for PEPO from Lender 2 that designated as the loan collateral a RESORT property that did not exist. The name of the Resort property BERRY designated as the collateral was an amalgamation of the names of two other Resort properties. Without the knowledge of Lender 2, BERRY sold both of the Resort properties. BERRY failed to repay the loan.

On September 12, 2008, BERRY obtained a loan for PEPO from a bank. BERRY provided as collateral for the loan Resort property "hotel room G3." On March 17, 2009, BERRY sold hotel room G3 for $160,000 to Buyer 3 who did not know that the property had previously been pledged as collateral for a loan. PEPO defaulted on the loan, and the bank foreclosed on the collateral, depriving Buyer 3 of the property.

On January 29, 2008, BERRY obtained a loan for PEPO from a bank. BERRY provided as collateral for the loan Resort property "Casa Brasil." BERRY later sold "Casa Brasil" for

$169,000 to Buyer 1 without informing Buyer 1 that the property had previously been pledged as collateral for a loan. PEPO defaulted on the loan, and the bank foreclosed on the collateral, depriving Buyer 1 of the property.

BERRY also failed to remit to a seller of a Resort residence proceeds from the sale of the residence. On February 21, 2007, BERRY agreed to cancel a sales contract for a residence known as "Ridgeline One Bedroom Townhome 4-B" and pay the owner of the property the resale price, minus a sales commission. BERRY then proceeded to resell the property twice, but he never paid the sales proceeds to the original owner, falsely claiming that he had been unable to resell the property. The unremitted sales proceeds totaled $83,750.

The total loss that occurred from the misrepresentations and double-dealing described in the Indictment and which is readily provable with evidence currently in the possession of the United States is approximately $1,955,528.

## Breach of Plea Agreement

14. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

15. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he/she will make a full and complete disclosure of all

assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he/she has an interest, unless Defendant obtains the prior written permission of the United States.

16. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

19. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Even though he is pleading to a money laundering count rather than a wire fraud

count, the Defendant acknowledges that the factual basis of this plea supports his admission that he caused a monetary loss to the victims identified in the factual basis and in the amounts described in the factual basis. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss of at least $1,955,528. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

20. Defendant stipulates and agrees that the factual basis for his/her guilty plea supports the forfeiture of at least $40,000 against him/her and in favor of the United States, and Defendant agrees to the imposition of a personal money judgment for that amount against him/her and in favor of the United States of America. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists. Defendant agrees to forfeit any of his/her property, or his/her interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

21. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

22. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

23. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

24. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

25. This written plea agreement, consisting of 14 pages, including the attached addendum of Defendant and his/her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

26. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on JUNE 23, 2017.

_____
Defendant

Subscribed and sworn to before me on JUNE 23, 2017.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk


APPROVED:

Abe Martinez
Acting United States Attorney

By: _____        _____
Robert S. Johnson                          Phillip Gallagher
Assistant United States Attorney           Attorney for Defendant
Southern District of Texas

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-14-0089 |
| ROBERT ALAN BERRY, Defendant. | § § § | |

**PLEA AGREEMENT -- ADDENDUM**

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____            _____6/27/17_____
Attorney for Defendant                                             Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____            _____6/27/17_____
Defendant                                                                 Date

14